IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SAMANTHA D. CARSON                                                                    PLAINTIFF


         v.                          Civil No. 2:14-cv-02127


CAROLYN COLVIN, Commissioner,
Social Security Administration                                                        DEFENDANT


**MEMORANDUM OPINION**

Plaintiff, Samantha D. Carson, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for, a period of disability, disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff filed her applications for benefits on October 16, 2012, alleging an onset date of July 22, 2012, due to having a rod and screws in her left leg. (T. 48, 64). The Commissioner denied Plaintiff's applications initially and on reconsideration. (T. 46-72). An Administrative Law Judge ("ALJ") held an administrative hearing on July 2, 2013. (T. 24-45). The Plaintiff was present and testified at the hearing. (T. 30-40). Plaintiff was represented at the hearing by counsel, David K. Harp. (T. 28, 89-90). Vocational expert, Larry Seiford, also testified at the hearing (T. 23, 40-44).

At the time of the hearing, Plaintiff was 28 years old and possessed a tenth grade education. (T. 26). Plaintiff had past relevant work ("PRW") experience as a 911 dispatcher.

1

On August 23, 2013, the ALJ found that the Plaintiff's fracture of the left lower extremity was severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (T. 13-14). The ALJ found that the Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as is defined in 20 CFR 404.1567(a) and 416.967(a), except that she can occasionally climb, balance, stoop, kneel, crouch, and crawl. (T. 14-17). With the assistance of a vocational expert, Larry Seiford, the ALJ found Plaintiff could perform her PRW as a government radio dispatcher. *Dictionary of Occupation Titles* ("DOT") No. 379.362-010.

The Appeals Council denied Plaintiff's request for review on April 10, 2014. (T. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned by consent of the parties. (Doc. 7). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 12, 14).

## II. Applicable Law:

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents

the findings of the ALJ, we must affirm the decision of the ALJ. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the ALJ reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.** **Discussion:**

Plaintiff raises the following issues on appeal: (A) whether the ALJ's RFC determination is inconsistent with the record; (B) whether the ALJ failed to fully and fairly develop the record; and, (C) whether Plaintiff can perform her past relevant work.

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

### A. RFC Determination

Plaintiff argues the ALJ erred in his RFC determination by concluding that the Plaintiff could engage in her PRW, when such a finding is not supported by the evidence in the record.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009); *see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).

The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by

medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence). "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

After consideration of the entire record, the ALJ concluded the following:

> "The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.9679(a) except that she can occasionally climb, balance, stoop, kneel, crouch, and crawl." (T. 14).

In making this RFC determination, the ALJ considered all relevant evidence in the record, including medical evidence, observations of her treating physician and others, and the Plaintiff's own description of her limitations. (T. 14-17).

In July 2012, Plaintiff's left leg was fractured when she was accidentally run over by a car. (T. 310). Plaintiff underwent surgery by Dr. Jeffrey K. Evans, where he repaired the tibia and fibula through an intramedullary nailing. (T. 294, 310). However, since the surgery, Plaintiff has had problems with her left leg. On October 20, 2011, Plaintiff visited the ER complaining of leg pain and swelling, primarily in the left knee. (T. 258). She was prescribed 15 mg of Meloxicam for the swelling. (T. 259). Plaintiff was already taking aspirin and hydrocodone for her pain. (T. 259). On October 29, 2011, Plaintiff again visited the ER after twisting and hurting her knee and leg the previous night. (T. 275). There was no degree of swelling. (T. 275). X-rays revealed a healing fracture on the left tibia and a healed fracture on the left fibula. (T. 277). Plaintiff was prescribed Lortab. (T. 276).

On December 13, 2012, Plaintiff visited Dr. Evans for a five month follow-up of her surgery. (T. 294). Plaintiff's gait and inspection of the bilateral knees and ankles were normal. (T.

294). Plaintiff had full range of motion and normal stability of the bilateral knees and ankles. (T. 294). X-rays showed progression of healing of the fractures. (T. 295). Plaintiff was encouraged to bicycle to improve her motor strength. (T. 294). Plaintiff visited the ER on February 15, 2013 complaining of leg pain and a knot on her knee present since September 2012. (T. 296). She reported she had issues with her leg giving out, as well as leg numbness and hot and cold sensations. (T. 296-298). Plaintiff was positive for joint swelling and a gait problem. (T. 298). She had decreased range of motion in her left knee (T.299). Plaintiff was given a knee splint for stability when walking, but instructed by the ER non-orthopedists to see Dr. Evans for reevaluation of her knee instability and discomfort. (T. 297). However, Dr. Evans would not see Plaintiff due to an outstanding bill. (T. 297-298).

On March 15, 2013, Plaintiff visited Ms. Oxford, a nurse practitioner, for evaluation of her left leg pain, primarily in her knee and ankle. (T. 310). Decreased range of motion, swelling, and tenderness were found in Plaintiff's left ankle and knee. (T. 310-311). Plaintiff was observed to have a gait problem. (T. 311). Plaintiff also developed anxiety due to her injury and continued pain. (T. 310). Ms. Oxford ordered x-rays for the left leg and prescribed Paxil for Plaintiff's anxiety. (T. 310-311). X-rays revealed that fibula fracture had healed, but the tibia fracture remained visible. (T. 312). On March 25, 2013, Plaintiff visited the ER with complaints of left leg pain and swelling. (T. 318). The swelling was noted to be minimal. (T.318). Plaintiff was prescribed Tylenol #3 and Meloxicam. (T. 318). Plaintiff was discharged with moderate tenderness and no swelling of the left ankle. (T. 319). On April 30, 2013, Plaintiff had an MRI of her left ankle. (T. 351). The doctor found small ankle joint effusion and a very small focal area of marrow edema type changes of the posterior calcaneus near the Achilles insertion. (T. 352). He surmised this may just be a bone bruise from previous trauma. (T. 352).

In her function report on October 18, 2012, Plaintiff contends she is unable to climb stairs, bend, kneel, squat, or reach. (T. 201). She reports only being able to lift about 5 pounds, stand about 5 minutes, walk about 5 minutes, and sit for 5 to 10 minutes. (T. 201). Sitting, standing, and walking all cause pain. (T. 193). Her activities include: getting her kids dressed when they bring her their clothes; making quick and easy dinners; folding laundry when brought to her; and, watching TV with her leg propped up. (T. 196-200).

Plaintiff argues that the ALJ's RFC determination is inconsistent with the evidence in the record in that it does not account for: whether her leg needs to be propped up; whether her knee splint prevents her from bending; and, whether her pain would have a significant effect on her attention, concentration, stamina, and other non-exertional abilities. The ALJ found that Plaintiff could perform sedentary work, with occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (T. 14). However, as Plaintiff argues, there was insufficient evidence for the ALJ to make such a determination.

Plaintiff was given a knee immobilizer to wear following her February 15, 2013, ER visit to help with her balance while walking. (T. 301-302). The ER doctors emphasized that Plaintiff needed to see an orthopedist to determine if anything can be done about her instability and discomfort in her left leg. (T. 297). Plaintiff was unable to visit the orthopedist who performed her leg surgery, Dr. Evans, due to an outstanding bill, and did not visit any another orthopedist. Plaintiff did not have a consultative exam to determine her functional capacity.

As such, we do not have enough medical evidence to determine Plaintiff's functional capabilities. There is not a report by either a treating or examining source addressing Plaintiff's work related limitations. The only limitations suggested by treating and examining sources with any frequency are range of motion and gait problems, but these diagnoses are inconsistent with

7

each other at different times and never detailed. It is unknown whether the Plaintiff could stand for two hours and sit for six, as is required for sedentary work, or if her leg must be propped up to relieve pain. SSR 83-10. It is unknown whether Plaintiff's tibia fracture will ever heal properly or how long she is required to wear the knee immobilizer, nor what effect either of these has on her bending capabilities. Treating and examining sources have not opined on these crucial points in any significant detail to support ALJ's findings.

Accordingly, the case will be remanded and a consultative examination with either a treating or examining source is to be ordered to address these issues and the Plaintiff's limitations. Plaintiff alleges that her impairment requires a sit/stand option allowing her to get up and move around every twenty minutes. Given the nature of the Plaintiff's injury, on remand, the ALJ is directed to consider whether a sit/stand option should be included in the RFC assessment.

**V.     Conclusion:**

Having carefully reviewed the record, the undersigned does not find substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, thus the decision is remanded. The undersigned further orders a consultative exam be conducted to determine Plaintiff's work related functional capacity.

DATED this 18th day of June, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE